# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
September 15, 2015

v

TYRONZA RAY BUSH,

Defendant-Appellant.

No. 311543
Livingston Circuit Court
LC No. 11-020053-FH

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Following a bench trial, defendant was convicted of assault with a dangerous weapon (2 counts), MCL 750.82, domestic violence, MCL 750.81(2), inciting or procuring perjury in a court proceeding, MCL 750.425, and intimidating a witness, MCL 750.122(7)(a). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 4 to 15 years for the assault convictions, and 3 years and 9 months to 15 years for the procuring perjury and witness intimidation convictions. The court also sentenced defendant to 93 days for the domestic violence conviction. Defendant appeals as of right. For the reasons set forth in this opinion, we affirm.

## I. BASIC FACTUAL BACKGROUND

On February 26, 2011, during an argument with Lindsay Bristol, defendant placed a pair of scissors to Bristol's neck and threatened to kill her. He then chased her into her bedroom with a knife, took away her phone, and choked her. Defendant then left the apartment, apparently because he was concerned that Bristol's screams would cause someone to call the police. After defendant left, Bristol called 911.

At the preliminary examination, Bristol testified inconsistently with her prior statements. Afterwards, she informed the police that the reason she testified inconsistently was because of pressure and threats from defendant and defendant's attorney. At trial, Bristol testified that after the assault, defendant told her over the phone unless she did as told by defendant, he would have people go to her house and hurt her or her property. She also testified that defendant called her numerous times from jail, telling her to send a letter to his parole officer and the prosecutor stating that the incident did not happen. Recordings of these calls, which were played during the trial, established that defendant repeatedly told Bristol to contact her therapist and have him sign

-1-

a letter. He also repeatedly told her to write a letter indicating that she was on a new prescription and had been drinking alcohol on the night of the incident, and that as a result she was delusional and had a mental breakdown. He also instructed Bristol to say that he did not touch her that night. In addition, defendant told her not to come to court and to dodge her subpoena. He instructed that if she did come to court that she should testify consistently with the letter he had instructed her to write and that she should not testify that she did not know or remember what happened. In particular, defendant told her that she better "get with the program." He also indicated that he was going to send out texts to people and that he was going to send someone over to Bristol's home. Bristol testified that she felt threatened by the calls.

Defendant was convicted and sentenced as indicated above. This appeal then ensued.

## II. COMPETENCY

On appeal, defendant first argues that his trial counsel was ineffective for failing to investigate and pursue a challenge to defendant's competency. As an offer of proof, appellate counsel asserts (1) that defendant suffered a serious head injury after falling from a third-story window when he was in the 10th or 11th grade, (2) that defendant had difficulty communicating with and interacting with his four or five trial attorneys, and (3) that defendant lacks a pre-injury criminal history. Appellate counsel added that he discovered information about defendant's serious head injury within minutes during a conversation with defendant's cousin, who was defendant's first trial attorney.

### A. PRESERVATION AND STANDARD OF REVIEW

This issue was never raised before the trial court, so it is unpreserved for appeal. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Although defendant filed a motion in the trial court for a new trial and an evidentiary hearing on his claim of ineffective assistance of counsel, he did not raise an issue of ineffective assistance of counsel claim *based on competency* or request a *Ginther*[1] hearing on this issue in the trial court. Accordingly, this Court's review is "limited to mistakes apparent from the record." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).[2]

Whether a defendant received effective assistance of counsel is a mixed question of fact and law. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "The trial court

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] In the motion for new trial, defendant argued that defense counsel was ineffective because he failed to call and investigate witnesses and to introduce information from the cell phone of defendant's sister. He also argued that his trial counsel was ineffective because she had a conflict of interest based on her pursuit of a position as the Livingston County Prosecuting Attorney. Finally, defendant also argued that the prosecutor committed misconduct in listing his first attorney on its witness list. He did not raise any issues pertaining to his competency at trial or to trial counsel's alleged ineffectiveness for failing to investigate his competency.

must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *Id*. (citations omitted).

## B. ANALYSIS

The right to counsel guaranteed by the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel. *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). In order to establish a claim of ineffective assistance of counsel, "the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceedings would have been different." *Id*. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004).

Criminal defendants are presumed competent to stand trial. *People v Abraham*, 256 Mich App 265, 283; 662 NW2d 836 (2003); MCL 330.2020(1). Challenges to competency can "be raised by the defense, court, or prosecution." MCL 300.2024. The challenges can "be raised at any time during the proceedings against the defendant." MCR 6.125(B). However, in order to raise a competency issue there must be evidence of incompetence. *People v Blocker*, 393 Mich 501, 508; 227 NW2d 767 (1975).[3] A defendant is not competent to stand trial if "his mental condition prevents him from understanding the nature and object of the proceedings against him or the court determines he is unable to assist the defense." *People v Mette*, 243 Mich App 318, 331; 621 NW2d 713 (2000). Thus, unless there is evidence that the defendant's mental condition prevents him from understanding the nature and object of the proceedings or the court determines that the defendant is unable to assist the defense, the issue of competence may not be raised. See *Blocker*, 393 Mich at 508; *Mette*, 243 Mich App at 331. The trial court only has an obligation to sua sponte raise the issue of competency if "facts are brought to its attention which raise a 'bona fide doubt' as to the defendant's competence." *People v Kammeraad*, 307 Mich App 98, 138; 858 NW2d 490 (2014), quoting *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990). "Evidence of a defendant's irrational behavior, a defendant's demeanor, and

---

[3] If there is a showing that a defendant may be incompetent, the trial court "must order the defendant to undergo an examination by a certified or licensed examiner of the center for forensic psychiatry or other facility officially certified by the department of mental health to perform examinations relating to the issue of competence to stand trial." MCR 6.125(C)(1); MCL 330.2026. Further, upon a showing of good cause, "the court may order an independent examination of the defendant relating to the issue of competence to stand trial." MCR 6.125(D).

a defendant's prior medical record relative to competence are all relevant in determining whether further inquiry in regard to competency is required." *Id*. at 139.

There is no evidence on the record in this case that defendant was unable to understand the nature and object of the proceedings against him. In fact, the record is replete with examples indicating the opposite. First, defendant's testimony clearly shows that he was aware of the factual circumstances surrounding the alleged incidents. He was able to testify coherently about the sequence of events, including when things happened, where they happened, and who was around during the incidents. Further, the jail conversations between defendant and Bristol demonstrate that defendant was aware of the consequences of the actions against him. He knew, for instance, that the preliminary examination was a probable cause hearing and that if the case was not dismissed at that stage it would be bound over to circuit court for proceedings before a different judge. He also knew that if it was bound over he would be facing a trial. Moreover, defendant made several decisions throughout his trial indicating that he understood the object and nature of the proceedings against him, including when he waived his right to a jury trial and decided to testify on his own behalf.

The record also shows that defendant was able to significantly assist the defense. The record is replete with references to defendant actively providing assistance to his counsel. For instance, trial counsel indicated on the first day of trial that defendant was very involved in submitting notes to her, highlighting portions of police reports, and assisting the defense. On the second day of trial, after Bristol's direct examination, counsel requested a break to review notes from defendant and organize things. Then, during an argument to the court relating to defendant's cell phone, defendant was observed on the record whispering in his attorney's ear. Counsel then argued that the information in defendant's phone was important to show Bristol's bias and motive to lie and that it was what defendant was requesting his defense to be. In addition, on the third day of trial, after some of the recordings of the conversations with Bristol were played, defendant apparently communicated concerns about the volume of the recordings to his attorney, who placed his concerns on the record. Then, on the fourth day of the trial, counsel told the court that, after conversation with defendant, the defense had no objection to the court not listening to the shorter conversations that were two minutes or less in length. Counsel also indicated that, after speaking with defendant, the defense had no objection to the trial being adjourned because Bristol was sick or it being adjourned to address the issues pertaining to his cell phone. On the fifth day of the trial, counsel indicated during her cross-examination of Bristol that she was asking questions based on defendant's questions and written notes. She also asked for a break after the prosecution rested so she could confer with defendant. In addition, she stated that she had shared with defendant copies of the jury instructions, the law, and case law provided to her by the prosecution. On the sixth day of trial, she asked to confer with defendant about the evidence on the record. Finally, on the eight day of trial, counsel asked for the proofs to be reopened to admit evidence that defendant thought was important to his defense. Although the request was denied, it shows that she was in contact with defendant between the conclusion of proceedings on the seventh day of trial and the start of proceedings on the eighth day of trial.

Ultimately, what the record evidence establishes is that defendant actively assisted with his defense. Further, it establishes that there was nothing on the record that would raise a

question as to defendant's competence.  Without some indication of incompetence on the record, there was nothing that would have supported a request for a competency hearing.

We are mindful that defendant is asserting that the question of his competency should have been investigated by his attorney.  However, that defendant sustained allegedly serious head trauma when he was a teenager, has limited bearing on whether he was incompetent to stand trial in 2012 when he was in his early 30s.  Further, although defendant asserts that his lack of a pre-injury criminal record should support his incompetence argument, we believe that the opposite is true.  That defendant had numerous convictions after his head injury indicates that he apparently did not have any mental health issues or competency concerns that barred those proceedings.  Finally, that defendant has had multiple trial attorneys representing him does not appear to be the result of incompetence on defendant's part.  Instead, the record shows that his first attorney withdrew because she was listed as a possible witness on the prosecution's witness list.  His second attorney withdrew because of a breakdown in the attorney-client relationship.  Finally, his third attorney proceeded to represent him throughout the duration of the trial.  Although defendant later expressed dissatisfaction with counsel appointed for sentencing and other post-trial motions and appellate proceedings in this case, that does not alter the analysis as to whether defendant was competent at the time of trial.  Nor does it undermine confidence in the outcome of the trial.  See *Grant*, 470 Mich at 493.  There is, quite simply, nothing on the record to indicate that defendant was incompetent at the time of trial.  Accordingly, defendant is not entitled to relief on this issue.

## III.  STANDARD 4 BRIEF

Defendant raises several issues in a rambling, disjointed, pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.  All of defendant's arguments were reviewed and found to lack merit.

## A.  EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Defendant argues that his appellate counsel was ineffective because he failed to provide defendant with requested evidence and because the only issue raised in his appellate brief was frivolous.  This issue is preserved because it was raised in defendant's Standard 4 brief.  *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014).

> Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law.  The trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel.  The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo.  [*People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (internal quotation marks and citations omitted).]

"The Court uses the same legal standard for ineffective assistance of counsel when scrutinizing the performance of trial counsel and appellate counsel."  *Lopez*, 305 Mich App at 693.

To establish the claim, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Although defendant complains about appellate counsel's failure to raise additional issues, "[a]ppellate counsel may legitimately winnow out weaker arguments in order to focus on those arguments that are more likely to prevail." *People v Uphaus (On Remand)*, 278 Mich App 174, 186-187; 748 NW2d 899 (2008). Appellate counsel's decision is presumed to constitute sound strategy. *Id*. at 186. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

Defendant argues that his current appellate counsel was ineffective because he failed to obtain and provide defendant with evidence that defendant requested. Defendant does not identify what evidence appellate counsel failed to obtain. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Moreover, "[t]he defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Here, given that defendant has failed to identify what evidence his appellate counsel was supposed to obtain, it is impossible for this Court to determine whether an appellate counsel's performance fell below an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 51. It is also impossible to determine whether the outcome would have been different without appellate counsel's alleged incompetence. *Id*. Accordingly, we conclude that defendant has failed to establish that his appellate defense counsel was ineffective for failing to bring defendant's requested evidence to the jail when he met with defendant.

Defendant also alleges that appellate counsel was ineffective because he only raised a frivolous issue on appeal. Defendant asserts that appellate counsel knew the issue was frivolous because his motion to remand for a competency hearing was denied by this Court. However, this Court's order denying the remand motion was denied "for failure to persuade the Court of the necessity of a remand at this time."[4] Thus, we did not make a decision on the merits of the issue.

Further, the record does not indicate that the argument raised on appeal was frivolous. Although this Court ultimately concluded that the issue raised by appellate counsel was without merit, we note that appellate counsel directed this Court to facts that he believed supported his issue on appeal, including the fact that defendant had allegedly sustained a serious head injury while he was in the 10th or 11th grade and that the fact that defendant had gone through numerous court-appointed attorneys during the lower court and appellate proceedings. He also indicated that defendant's demeanor was another indication that defendant was incompetent, as was his lack of a pre-injury criminal history. He also directed this Court to pertinent legal

---

[4] *People v Bush*, unpublished order of the Court of Appeals, entered March 27, 2015 (Docket No. 311543).

authority in support of his issue. We therefore conclude that although defendant's argument was meritless it was not frivolous.

Additionally, there is nothing on the record to suggest that appellate counsel was representing the prosecution's interest when he filed defendant's brief on appeal. Defendant claims that appellate counsel objected to defendant's motion to represent himself on appeal. However, at the hearing on defendant's motion to represent himself pro per on appeal, appellate counsel indicated that he was trying to protect defendant's interests. He also indicated that he was willing to continue to represent defendant and that there would be no harm if he did because defendant would be able to file a Standard 4 brief to raise any issues he desired. Nothing on the record indicates that he was, in fact, trying to protect the prosecutor's interest. Because defendant cannot point to any evidence in support of his allegation, he has failed to meet his burden of establishing the factual predicate for his claim of ineffective assistance. *Douglas*, 496 Mich at 592.

Moreover, defendant cannot show that he was prejudiced because he has been afforded an opportunity to raise additional issues in a Standard 4 brief. Accordingly, defendant cannot establish that he was prejudiced by appellate counsel's failure to raise additional issues. *Lopez*, 305 Mich App at 694.

## B. SELECTION OF APPELLATE COUNSEL

Defendant next argues that his current appellate counsel was appointed in violation of MCL 780.712(6).

Questions of statutory interpretation are reviewed de novo. *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008). This Court reviews an unpreserved error for plain error that affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Reversal is not warranted unless the plain error resulted in the conviction of an innocent person, or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*.

MCL 780.712(6) provides:

The commission shall compile and keep current a statewide roster of attorneys eligible for and willing to accept appointment by an appropriate court to serve as criminal appellate defense counsel for indigents. The appointment of criminal appellate defense services for indigents shall be made by the trial court *from the roster provided by the commission* or shall be referred to the office of the state appellate defender. [Emphasis added.]

Our Supreme Court set forth standards for the appointment of appellate attorneys in Administrative Order No. 1989-3, 432 Mich cxx (1989). Pertinent to this appeal, AO 1989-3 provides that the appointment of an appellate attorney must be made by the chief judge or the

local designating authority. Further, regardless of who is responsible for appointing appellate counsel, except in circumstances not applicable in this case, the appointment must be made to an attorney on the local list. In this case, the trial court admitted that it had selected defendant's current appellate counsel because he was from another jurisdiction. Assuming *arguendo* that the appointment was, therefore, a violation of MCL 780.712(6), we nevertheless conclude that defendant cannot show that the alleged error affected his substantial rights. *Carines*, 460 Mich at 763. Counsel is presumed competent. *Solmonson*, 261 Mich App at 663. Accordingly, defendant cannot show that the appointment of one appellate attorney over another appellate attorney affected the outcome of the proceedings. *Carines*, 460 Mich at 763.

## C. PROSECUTORIAL MISCONDUCT

Defendant next raises numerous allegations of prosecutorial misconduct, none of which we find meritorious.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). There were no objections during the trial to any of the allegations of prosecutorial misconduct. We review de novo issues of prosecutorial misconduct to determine whether the defendant was denied a fair and impartial trial. *Id*. However, unpreserved prosecutorial misconduct claims are reviewed for plain error affecting the defendant's substantial rights. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476. Moreover, we "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id*. at 476.

Defendant first argues that the prosecutor failed to disclose exculpatory text messages. He also argues that, in collusion with defendant's court-appointed attorney, the prosecutor suppressed the text messages from his phone in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Under *Brady*, the prosecutor must turn over all evidence within its possession that is favorable to the accused and material to guilt or punishment. *Brady*, 373 US at 87. A *Brady* violation occurs if "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). Pertinent to this case, "[t]he government is held responsible for evidence within its control, even evidence unknown to the prosecution." *Id*., citing *Kyles v Whitley*, 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (1995). There was no *Brady* violation in this case. The record establishes that before trial the defense had possession of the text messages and the prosecution did not. Further, the record also shows that both the prosecutor and defendant's trial attorney were able to view the text messages. Accordingly, defendant cannot establish the first element of a *Brady* violation, i.e., that the prosecution has suppressed evidence.

Defendant also argues that the prosecution should have located and turned over the text messages based on Bristol's comments during a second interview. However, neither the police, nor the prosecution, are "required to seek and find exculpatory evidence." *People v Miller*, 211 Mich App 30, 43; 535 NW2d 518 (1995); see also *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003). Accordingly, this claim is also without merit.

Defendant next argues that it was prosecutorial misconduct for the prosecutor to object to defendant's phone being admitted into evidence. However, on October 7, 2011, pursuant to MCR 6.201 and MCL 767.94a, the prosecutor sent a request for discovery to defendant. Pertinent to this appeal, the prosecutor requested "[a] description of and an opportunity to inspect any tangible physical evidence that Defendant may introduce at trial, including copies of any document, photograph, or other paper." MCL 767.94a provides:

> (1) A defendant or his or her attorney shall disclose to the prosecuting attorney upon request the following material or information within the possession or control of the defendant or his or her attorney:
>
> * * *
>
> (d) Any book, paper, document, photograph, or *tangible object that the defendant intends to offer in evidence* or that relates to the testimony of a witness, other than the defendant, whom the defendant intends to call. [Emphasis added.]

Further, MCR 6.201(A)(6) provides that upon request a party must disclose "a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper, with copies to be provided on request." Accordingly, given that the prosecutor made a request for discovery that arguably covered the disclosure of defendant's cell phone, the prosecutor did not commit misconduct by then objecting to the proposed admission of the undisclosed evidence.

Next, defendant argues that his trial counsel and the prosecutor colluded to suppress the text messages and that they lied about the State Police Crime Lab's ability to retrieve the text messages. However, he only offers unsworn speculation in support of his allegations. Accordingly, he has abandoned this argument on appeal. *Kelly*, 231 Mich App at 640-641. Moreover, because both trial counsel and the prosecutor were able to view the text messages on defendant's cell phone in the jury room, defendant cannot show that the error affected his substantial rights. See *Carines*, 460 Mich at 763.

Defendant also alleges that the prosecutor and trial counsel colluded on questions, objections, which evidence and witnesses to present, and the content of the closing arguments. Again, he provides no factual support for these allegations. Accordingly, we deem this issue abandoned on appeal. *Kelly*, 231 Mich App at 640-641.

Defendant also alleges without factual support that some of the transcripts in the lower court proceedings were altered. However, he does not clearly identify all the allegedly altered transcripts and does not indicate what information in the transcripts was altered. Accordingly, we deem this issue abandoned on appeal. *Id.*

Next, defendant alleged that his court-appointed attorney was appointed as a result of lawyer shopping and that the prosecutor had the judge remove Kiana Franulic, defendant's first attorney, from the case in order to protect the prosecutor's interests. There is nothing to support the first assertion, so we need not address it further. *Id.* Further, the record belies his second assertion. On June 21, 2011, the prosecution listed Franulic on its witness list. The evidence presented at trial demonstrated that, at that time, the prosecution had reason to believe that

Franulic was potentially a witness to some of the charges. Moreover, on October 12, 2011 at an evidentiary hearing schedule to determine if Franulic could represent defendant, Racine Miller, an attorney for defendant, indicated that "Franulic has scholastic and medical issues that will prohibit her from trying this case." More importantly, Franulic stated:

> as of last Thursday I learned that I will be in need of some surgery and unfortunately will not be able to carry on that. So I will concede—well withdraw the motion to strike me from the witness list that was already in place, *and I will conceded that I may have knowledge about these two cases*. [Emphasis added.]

Thus, although defendant asserts that the prosecutor forced the judge to remove Franulic, the record clearly shows that she chose to stop representing defendant *before* anyone ordered her to stop representing him. Thus, defendant's claim is again devoid of merit.

Defendant also argues that the prosecutor committed misconduct by granting Bristol immunity from perjury and filing a false police report charges. During the prosecutor's direct examination, Bristol testified that the prosecutor had told her that she would not be prosecuted with perjury in conjunction with the preliminary examination. The prosecutor then stated to the court that she had represented to Bristol that her office would not prosecute her for perjury from the preliminary examination date. There is nothing on the record to suggest that Bristol was offered immunity from charges of filing a false police report. However, in any event, it is axiomatic that the incentives a prosecutor may offer in order to secure a witness's testimony may include offers of immunity. Given that the prosecutor in this case limited the immunity grant to the date of the preliminary examination, there is no indication that there was any misconduct. We conclude that defendant's claim is again, devoid of merit.

Similarly, to the extent that defendant seemingly argues the prosecutor committed misconduct by telling Bristol to cooperate even though there was no case, we conclude that the claim is also without merit. First, defendant does not provide any factual support for his allegations, so we conclude that the issue was abandoned. *Kelly*, 231 Mich App at 640-641. Second, the record as a whole belies defendant's claim that there was no case. Bristol's testimony, the jail recordings, and the testimony from Officer Parks all clearly indicate that there was a case against defendant. Accordingly, defendant's argument is again, devoid of merit.

Defendant next argues that the prosecutor mischaracterized some of his comments. During cross-examination, the prosecutor asked defendant if he told his sister that if he got out he was going to put Bristol "through some shit," but defendant said that he did not recall making that statement. The prosecutor asked for permission to refresh defendant's memory with a recording of the call where defendant allegedly made the statements. The call was played outside the court's presence. The prosecutor then asked:

> *Q*. On January 24th of 2012, after this trial had started, did you tell your sister Robin that if you get out you're gonna put [Bristol] through some bullshit?
>
> *A*. Yes. Some shit.

Then, on redirect examination, he clarified that he "would hate to have to put her through some shit when I got out." He explained that what he meant was that he was going to bring false

police report charges against her, sue her for wrongful imprisonment, and maybe do something about a racial intimidation. He said that he did not mean to harm her, touch her, or ask anyone else to go after her. Thus, defendant was able to fully explain what he meant by his "some shit" comment, so he cannot show on appeal that the alleged mischaracterization affected his substantial rights. See *Carines*, 460 Mich at 763.

Defendant also argues that "in the prosecutor's summary she stated that the reason complainant did not inform the 911 dispatcher of appellant attacking her with scissors and a knife was because of recency, as to which complainant did not state on record." Although defendant does not direct this Court to the appropriate page in the lower court record, it appears that the complained of statement was made during the prosecutor's rebuttal, when she argued:

> [Defendant's attorney] says to you that the felonious assault didn't happen because she didn't—it wasn't the first thing out of her mouth when she called 911. I would submit to the Court that the first thing out of her mouth when she's calling 911 is the last thing that happened to her, and that was the choking. It was what was most recent, what he had just done to her. She's crying on the phone my son's dad is choking me. She's coughing on the 911 call he's squeezing so hard it just happened. He's being violent. And then she said he took my purse— he took my phone and I just found it. And she's coughing. He squeezed so hard. And then she goes into the remainder of her statements to 911. Recency is what common sense would dictate that she would say to 911. Just because she didn't start off her 911 call that he chased her with a knife and held scissors to her neck doesn't meant that it didn't happen.

"Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). However, "[a] prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial . . . ." *People v Unger*, 278 Mich App 210, 236, 241; 749 NW2d 272 (2008). Here, Bristol testified that defendant put scissors to her neck, then he chased her down the hall with a knife, and then he choked her. She also testified on cross-examination that she was "hysterical" and "couldn't barely talk." She said that she might not have told the 911 operator about the scissors and the knife. However, she did recall telling the operator that defendant chocked her. Accordingly, we conclude that the prosecutor's statements during rebuttal argument were a reasonable inference that could be drawn from the evidence actually admitted at trial. *Seals*, 285 Mich App at 22. There was no error.

Next, defendant argues that the prosecutor presented fabricated evidence. He argues this occurred when the prosecution introduced photographs of Bristol's *right* leg and *right* arm that were not taken at the scene on the night of the injury and were not described in the hospital reports. He argues that at the preliminary examination, the trial court admitted a defense exhibit that included photographs of self-inflicted scratches on Bristol's *left* wrist. He argues that, then, even though there was absolutely no reason to do so, the trial court forced Franulic to surrender defendant's copy of the exhibits to the prosecution. The preliminary examination transcript shows that Franulic did introduce a photo array that included photographs of Bristol's injuries. The record also shows that at the conclusion of the preliminary examination, the prosecutor

requested permission to retain the exhibits, which the trial court permitted over defense objection. However, the preliminary examination transcript does not indicate whether the injury was to Bristol's right or left arm, and there were no allegations that the injuries were self-inflicted scratches. Moreover, at trial a nurse testified that Bristol had received treatment on February 27, 2011 and he said that she had a contusion on her *left* forearm and muscle spasms along the left side of her neck. Further, the record shows that both the prosecution and the defense admitted photographs of Bristol having a right arm injury. However, nothing on this record appears to suggest that the prosecutor actually fabricated evidence or even had a reason to fabricate evidence. Further, defendant has not directed this Court to any support in the record to show that there was an attempted fabrication of evidence, so this Court should consider the issue abandoned on appeal. See *Kelly*, 231 Mich App at 640-641. Moreover, during its findings the court indicated that regardless of whether the injuries were to her right arm or left arm, the court was satisfied by the testimony from the nurse that Bristol had been injured. Thus, given the limited weight the trial court assigned to whether Bristol was injured on the right or left side of her body, defendant cannot show plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

Defendant next argues that the prosecutor committed misconduct by presenting false and fabricated evidence. A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2010). Here, defendant argues that the prosecutor monitored all calls between defendant and Bristol. He asserts that in the recordings, Bristol admitted that she lied to have defendant imprisoned and that she was helping defendant with the letter because she lied. He argues that, as a result, the prosecutor presented false testimony in order to secure a conviction. However, the recordings admitted into the record do not support defendant's claim. Thus, this claim is again, devoid of merit.

Defendant also argues that the prosecutor and trial counsel worked together to suppress the jail calls between defendant and Bristol on Bristol's mother's phone. He does not provide any factual support for this assertion, nor does he direct the court to pertinent areas of the record. Accordingly, we consider this issue abandoned on appeal. See *Kelly*, 231 Mich App at 640-641.

Finally, defendant argues that the prosecutor committed misconduct by fabricating a search warrant in order to gain possession of defendant's cell phone. In support, he attaches a copy of the search warrant as an exhibit on appeal. However, the search warrant pertains to new charges against defendant, was entered after defendant was sentenced in the current case, and does not pertain to any issues on appeal. Moreover, defendant does not explain why he believes the search warrant was fabricated. Nor does he explain how it is properly considered part of this record on appeal. Defendant may not expand the record on appeal. *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). Accordingly, we will not consider this issue further.

## D. COUNSEL OF CHOICE

Defendant next argues that he was deprived his constitutional right to counsel of choice because the prosecutor listed Franulic on her witness list and caused her to withdraw from the case.

However, the record shows that Franulic voluntarily withdrew from the case for medical reasons and because she conceded that she possibly had knowledge about defendant's cases. Defendant did not object to the removal of Franulic as his counsel. Instead, he agreed on the record that she should no longer be his attorney, that he had no objection to the court permitting Franulic to withdraw as his counsel, and that he wanted a court-appointed attorney. Accordingly, this issue is waived. Waiver is defined as "'the intentional relinquishment or abandonment of a known right.'" *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000), quoting *Carines*, 460 Mich at 762-762 n 7. "It differs from forfeiture, which has been explained as 'the failure to make the timely assertion of a right.'" *Carter*, 462 Mich at 215. Because a waived error is extinguished, there is nothing for this Court to review. *Id*. at 216.

### E. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant next argues that his trial counsel was ineffective for a variety of reasons. "Generally, a motion for a new trial or for an evidentiary hearing is a prerequisite to appellate review of a claim of ineffective assistance of counsel." *People v Johnson*, 144 Mich App 125, 129; 373 NW2d 263 (1985). Defendant preserved some of his allegations in a post-judgment motion for a new trial where he alleged his trial counsel was ineffective because she failed to call and investigate witnesses that defendant told her about and because she failed to introduce evidence from defendant's phone and defendant's sister's phone. However, the trial court denied defendant's motion for a *Ginther*[5] hearing on the ineffective assistance of counsel claim. "When no *Ginther* hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

The right to counsel guaranteed by the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel. *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). To establish the claim, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Solmonson*, 261 Mich App at 663.

Defendant argues that trial counsel was ineffective because she refused to contact defendant's sister to obtain evidence of what defendant wanted presented at his trial. However, the record shows that trial counsel contacted defendant's sister during the trial and told her that she was going to testify. Further, defendant's sister testified that she sent defendant's cell phone to Franulic in around March of 2011 and Franulic testified that she received the cell phone from defendant's sister in the early summer of 2011. Defense trial counsel was not appointed to represent defendant until October of 2011. Accordingly, given that defendant's sister did not

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

have possession of the cell phone at the time that trial counsel was supposed to be contacting defendant's sister to obtain the cell phone, there is nothing to suggest that trial counsel was ineffective for failing to contact trial counsel to obtain defendant's cell phone. Further, Franulic testified that she mailed defendant's cell phone to trial counsel in January of 2012. Accordingly, defendant cannot show that he was prejudiced by trial counsel's failure to contact defendant's sister to obtain the phone because (1) defendant's sister did not have the phone at the time that trial counsel was defendant's attorney and (2) trial counsel actually had the phone before defendant's trial started. See *Trakhtenberg*, 493 Mich at 51.

Next, defendant argues that trial counsel was ineffective because she failed to enter defendant's sister's text messages into evidence because she told him that they were hearsay. MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Trial counsel determined that the text messages were hearsay. On this record, we cannot say that she was incorrect. Although defendant asserts that the texts would have been admissible pursuant to MRE 803(1) (present sense impression), (2) (excited utterance), and (3) (then existing mental, emotional, or physical condition). Defendant does not explain how the hearsay exemptions would apply. Nor does he identify when the texts were made or what was said in them that would have been helpful to his case.[6] We are not obligated to support defendant's

<hr>

[6] The following exchange occurred between the prosecutor and defendant's sister on cross examination:

*Q*. And she never told you that the incident from February 26th never happened, did she?

*A*. She told me she don't remember.

*Q*. Did she ever tell you it didn't happen?

*A*. No, she said I don't remember.

*Q*. And she never told you that she made it up, did she?

*A*. She in so many words—I have some messages on my phone that kind of got deleted, but—

*Q*. Kind of got deleted?

*A*. —in some may words I know they didn't happen with her. She has a history of—

*Q*. I'm not asking you about her history. I'm asking—

*A*. Okay.

-14-

arguments. *Kelly*, 231 Mich App at 640-641. Further, defendant is expected to provide the factual basis for his ineffective assistance of counsel claims, which he has failed to do in this case. *Douglas*, 496 Mich at 592. Accordingly, we conclude defense counsel made a strategic decision not to present the evidence in the text messages because she believed it to be objectionable. "[T]his Court will not second-guess counsel regarding matters of trial strategy, and even if defense counsel was ultimately mistaken, this Court will not assess counsel's competence with the benefit of hindsight." *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999).

Next, defendant argues that trial counsel was ineffective because she waited until the second day of trial to enter defendant's phone into evidence. The record shows that trial counsel first attempted to introduce defendant's cell phone as evidence on the second day of trial; however, it also shows that the trial court arranged for trial counsel and the prosecutor to view the contents of the phone in the jury room. Further, although the trial court did not admit the text messages as substantive evidence, the court ruled that they were admissible for impeachment purposes. Accordingly, defendant cannot establish that he was prejudiced by any possible deficiency because he cannot show the outcome would have been different if the text messages had been disclosed earlier in the trial. Moreover, trial counsel indicated that she only intended to use the text messages for impeachment purposes. Thus, defendant cannot show that the absence of an earlier disclosure would have affected the outcome of the trial. See *Trakhtenberg*, 493 Mich at 51.

Defendant argues that trial counsel was ineffective because she acted like she could not connect the courtroom's video and audio cards to her laptop. However, the record shows that the jail call recordings were picked up by the courtroom's audio. Moreover, the record shows that trial counsel was actively attempting to ensure that all of the jail calls were audible. Defense trial counsel even brought speakers to try and boost the volume of the recordings. Moreover, the jail recordings were admitted as exhibit 1, so defendant cannot show that he was prejudiced by the allegedly improperly connected video and audio cards. The entirety of the jail recordings between defendant and Bristol were part of the record, independent of the transcript that was prepared. Thus, defendant cannot meet his burden of showing that the outcome of the trial was prejudiced by trial counsel's allegedly deficient performance. See *id*.

Next, defendant argues that trial counsel was ineffective because she fabricated a story about how the text messages could not be retrieved. However, defendant has presented no evidence in support of this allegation, so we will not consider it further on appeal. *Kelly*, 231 Mich App at 640-641. Moreover, defendant has failed to establish that he was prejudiced by the alleged fabrication of the story. The record shows that both the prosecutor and trial counsel were

---

*Q.* —you did she ever tell you that she made this up?

*A.* No.

Thus, it is clear that the text messages from defendant's sister did not directly refute Bristol's allegations about the assault.

able to view the text messages in the jury room before the conclusion of Bristol's testimony. Accordingly, defendant cannot show prejudice.

Defendant next argues that trial counsel was ineffective because she did not subpoena any of defendant's witnesses. He does not identify the witnesses that trial counsel was supposed to subpoena, provide affidavits about what they would have testified about, or explained how the outcome of his trial would have been different had the witnesses been subpoenaed to testify at his trial. Accordingly, he has not established the factual predicate for his claim. *Douglas*, 496 Mich at 592.

Defendant next argues that trial counsel was ineffective because she did not address every inconsistency in Bristol's testimony during her cross examination and her closing argument. Decisions as to what evidence to present, whether to call or question witnesses, and what evidence to highlight in closing argument are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). This Court does not second-guess counsel on matters of trial strategy. *Rice (On Remand)*, 235 Mich App at 445. Here, defendant does not identify which inconsistencies trial counsel failed to address. Accordingly, he has failed to overcome the presumption that trial counsel was acting pursuant to a trial strategy. That a strategy does not succeed does not render its use ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Moreover, defendant cannot show that he was prejudiced by the allegedly deficient performance. tTial counsel's cross-examination of Bristol was thorough. She asked questions about: (1) Bristol's contact with the police, the prosecutor's office, and the LACASA; (2) the events leading up to the incident, including whether Bristol was intoxicated on the night of the incident; (3) Bristol's relationship with defendant and whether Bristol was jealous of defendant being with other girls; (4) inconsistencies between Bristol's story and the placement of physical evidence at the scene; (5) her failure to tell the 911 operator about the knife and scissors; (6) her injuries; (7) her text messages to defendant after the incident; (8) her conversations with defendant while defendant was in jail; (9) Bristol's therapist; (10) the letter Bristol wrote to defendant's parole officer; (11) the statements Bristol gave to the police; (12) prior inconsistent statements she had made; (13) contact between Bristol and defendant's family; (14) the fact that Bristol admitted to lying under oath at the preliminary examination; and (15) her immunity agreement. Without pointing out specifically what more Bristol should have been cross-examined on, we cannot say that defendant met his burden in showing that but for counsel's alleged deficiency in questioning Bristol, the outcome of his trial would have been different. See *Trakhtenberg*, 493 Mich at 51.

Defendant also argues that trial counsel was ineffective because she had a conflict of interest because she announced that she was running for prosecutor in Livingston County. A defendant is denied effective assistance if counsel had an actual conflict of interest that affected counsel's performance. *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998). In *People v Davenport*, 483 Mich 906, 906; 762 NW2d 163 (2008), our Supreme Court stated:

> A presumption of prejudice exists when a defendant's former defense counsel joins the prosecutor's office that is pursuing the case against the defendant. MRPC 1.9(b), 1.10(b). Such a presumption may be overcome, however, if the prosecutor shows that the attorney who has a conflict of interest was properly screened out from "any participation in the matter." MRPC 1.10(b). . . . [*Id.*]

-16-

In this case, trial counsel apparently announced she was running for office after defendant was convicted. However, nothing on this record indicates that she joined the prosecutor's officer while the office was pursuing the case against defendant. Accordingly, we conclude that the mere fact that trial counsel announced her candidacy for the position of prosecuting attorney did not create an actual conflict of interest, so defendant cannot establish that he was prejudiced. See *Trakhtenberg*, 493 Mich at 51.

## F. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there is insufficient evidence to support his convictions. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Due process requires, that when the evidence is viewed in the light most favorable to the prosecution, a reasonable trier of fact could find each element of the crime established beyond a reasonable doubt. *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). It is the trier of fact's role to judge credibility and weigh the evidence. *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011).

Defendant was convicted of two counts of felonious assault. The elements of felonious assault are: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (internal quotation marks and citation omitted). Dangerous weapons include "a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon." MCL 750.82(1). Here, Bristol did not mention the scissors or the fact that defendant chased her with a knife during the 911 call; however, she testified that defendant placed scissors against her neck and threatened to kill her and that he chased her with a knife. Thus, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to convict her defendant of felonious assault. *Lundy*, 467 Mich at 257.

Defendant was also convicted of domestic assault. MCL 750.81(2) provides in pertinent part that an individual is guilty of domestic assault if he or she "assaults or assaults and batters . . . an individual with whom he or she has had a child in common . . . ." An "assault" refers to "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011). Bristol testified that defendant was her son's father and that defendant choked her. Accordingly, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to convict defendant of domestic assault. *Lundy*, 467 Mich at 257.

Defendant was also convicted of inciting or procuring perjury in a court proceeding. MCL 750.425 provides that an individual is guilty of inciting or procuring perjury if he or she endeavors "to incite or procure any person to commit the crime of perjury . . . ." Perjury is defined "as a willfully false statement regarding *any* matter or thing, if an oath is authorized or required." *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004) (emphasis in original). Here, Bristol's testimony and the jail calls between defendant and Bristol show that defendant was instructing Bristol how to testify at the preliminary examination. Bristol testified that he threatened to have her beaten up or her property damaged. She said that because of the pressure, she testified untruthfully at the preliminary examination. Thus, viewing the evidence in the light

most favorable to the prosecution, there was sufficient evidence to support defendant's conviction of inciting or procuring perjury. *Lundy*, 467 Mich at 257.

Finally, defendant was also convicted of witness intimidation. MCL 750.122(3) provides:

> A person shall not do any of the following by threat or intimidation:
>
> (a) Discourage or attempt to discourage any individual from attending a present or future official proceeding as a witness, testifying at a present or future official proceeding, or giving information at a present or future official proceeding.
>
> (b) Influence or attempt to influence testimony at a present or future official proceeding.
>
> (c) Encourage or attempt to encourage any individual to avoid legal process, to withhold testimony, or to testify falsely in a present or future official proceeding.

Here, defendant's testimony, Bristol's testimony, and the jail calls show that defendant told Bristol not to come to court. The evidence also shows that he encouraged Bristol not to open the door after he learned that she might have not been served with a subpoena. Finally, given the substantial evidence in the jail calls that defendant was trying to tell Bristol what to testify about, should she testify, there was more than sufficient evidence to convict defendant of witness intimidation.

## G. JUDICIAL BIAS

Defendant next argues that the trial judge exhibited judicial bias. This issue is unpreserved because it was not raised in the trial court. *Jackson*, 292 Mich App at 597. Unpreserved claims of judicial bias are reviewed for plain error. *Id*.

Defendant argues that the trial court judge was biased against him because he made a series of rulings against defendant, such as when he declined to grant defendant's motion for a continuance to retrieve the text messages from defendant's cell phone and when he declined to grant defendant's motion for a mistrial after defendant alleged trial counsel had a conflict of interest. He also argues that the trial court was working in collusion with the prosecutor and trial counsel to suppress evidence, such as the text messages from defendant's phone and the text messages between defendant's sister and Bristol. "A party that challenges a judge for bias must overcome a heavy presumption of judicial impartiality." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). A judge's opinions or judicial rulings are not valid grounds for alleging bias "unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Jackson*, 292 Mich App at 598 (citations and quotation omitted). Here, nothing in the record even suggests that the trial court's actions in denying the challenged motions were based on "deep-seated favoritism or antagonism." See *id*. Nor is there any indication that the trial court's evidentiary decisions implicated any basis for a finding of judicial

bias. Finally, although the record shows that the trial court's appointment of defendant's current appellate counsel may have been in violation of MCL 780.712(6) and AO 1989-3, the record also clearly shows that the reason for the trial court's decision was because the trial court was trying to alleviate defendant's concerns that local attorneys were conspiring against him. Thus, even when the trial court attempted to accommodate defendant, defendant claims the accommodation was made out of bias. Simply put, there is no evidence that the trial court conducted itself in anything other than in strict compliance with its duty to remain impartial. Accordingly, we find defendant's assertion of judicial bias completely lacking any indicia of fact and accordingly this Court finds that defendant has failed to overcome the heavy presumption of judicial impartiality. See *Wells*, 238 Mich App at 391.

## H. CONTINUANCE OR ADJOURNMENT

Defendant next argues that the trial court abused its discretion in denying his motion for a continuance so that the State Police Crime Lab could retrieve text messages from his phone. This Court reviews for an abuse of discretion a trial court's ruling on a defendant's request for an adjournment or a continuance. *Coy*, 258 Mich App at 18-19. MCR 2.503(C)(2) provides that an adjournment based on the unavailability of evidence may only be granted "if the court finds that the evidence is material and that diligent efforts have been made to produce the . . . evidence." In *Coy*, 258 Mich App at 18-19, this Court stated:

> Thus, to invoke the trial court's discretion to grant a continuance or adjournment, a defendant must show both good cause and diligence. Good cause factors include whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments. Even with good cause and due diligence, the trial court's denial of a request for an adjournment or continuance is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion. [Internal quotation marks and citations omitted.]

Here, assuming that defendant could establish good cause and diligence, he cannot show that he was prejudiced by the court's denial of his motion for a continuance. First, defendant had access to the text messages before the trial because the phone with the text messages on it was in possession of defendant's trial attorney for about a month before trial. Second, after the phone was secured in the trial court's possession, the trial court made the contents of the phone available for inspection by both the prosecution and the defense. Accordingly, based on this record defendant cannot demonstrate he was prejudiced. He was allowed to review the information and was allowed to use it for impeachment purposes during his cross-examination of Bristol.

## I. RIGHT TO PRESENT A DEFENSE

Defendant next argues that he was deprived his constitutional right to present a defense because evidence was excluded from his trial or was admitted during his trial and ignored. He asserts that if the evidence had been presented no reasonable juror could have found him guilty beyond a reasonable doubt. In order to preserve a claim that a defendant was deprived of his or

her constitutional right to present a defense, the defendant must present his or her claims to the trial court. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). Here, defendant did not argue that he was denied to his constitutional right to present a defense. Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights. *Coy*, 258 Mich App at 12.

Defendant argues that if the evidence been presented, Bristol's testimony would have been impeached by statements that she had lied about the incident, that she was the one going crazy the night of the incident, and that she lied when she said defendant was harassing her (because she was actually harassing defendant). It would have also shown that defendant did not intend to put Bristol through "some shit" as was characterized by the prosecutor. However, given the overwhelming evidence against defendant, it is unlikely that additional impeachment evidence would have affected the outcome of the trial. Bristol testified that defendant pressed scissors to her neck, chased her with a knife, and choked her. She testified that she lied at the preliminary examination because she was pressured by defendant. The jail recordings clearly indicate that defendant was instructing Bristol on what she should say in her testimony. They also clearly demonstrated that defendant was instructing Bristol not to go to court and to try and avoid her subpoena by not opening the door.

Moreover, a defendant is not deprived of the right to present a defense if the defendant is otherwise able to present his theory to the jury with other evidence. *People v Herndon*, 246 Mich App 371, 411-412; 633 NW2d 376 (2001). In this case, defendant denied assaulting Bristol with scissors, a knife, or physical contact. He testified that Bristol texted him about 100 times between the night of the incident and the date he turned himself in. He said that she "came straight" with him on March 4, 2011 and told him that she was on depression medication, had been drinking, blacked out, and had a nervous breakdown. Accordingly, given that the allegedly excluded or ignored evidence was presented via defendant's testimony, we conclude that defendant was not deprived of his right to present a defense. *Id*.[7]

## J. MISTRIAL OR NEW TRIAL MOTION

Finally, defendant argues that the trial court abused its discretion when it denied his motion for a mistrial or a new trial. A trial court's decision on a motion for a mistrial is reviewed for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). An abuse of discretion exists if the trial court selects an outcome that falls outside the range of reasonable and principled outcomes. *Id*. Further, this Court reviews "the denial of a motion for a new trial for an abuse of discretion." *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003).

---

[7] In addition, a trial court may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403. Because defendant testified that Bristol lied about the incident, the presentation of other evidence indicating that Bristol had lied could be considered cumulative to his testimony.

Here, the record shows that defendant's arguments that Henry was ineffective because she announced her candidacy for county prosecutor were without merit. Nothing on the record indicated that trial counsel had an actual conflict of interest. Accordingly, the trial court did not abuse its discretion in denying the motions for mistrial and new trial based on defendant's allegations that trial counsel had a conflict of interest. Moreover, to the extent that defendant raised other allegations regarding the fabrication of evidence by the prosecutor, collusion between trial counsel and the prosecutor, and the suppression of defendant's evidence, the issues have all been considered at various points in this opinion. They are all devoid of merit. Accordingly, we conclude that the trial court did not abuse its discretion in denying the motions.

Affirmed.


/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell